1    PAUL L. REIN, Esq. (SBN 43053)
     CELIA MCGUINNESS, Esq. (SBN 159420)
2    CATHERINE M. CABALO, Esq. (SBN 248198)
     LAW OFFICES OF PAUL L. REIN
3    200 Lakeside Drive, Suite A
     Oakland, CA 94612
4    Telephone: 510/832-5001
     Facsimile: 510/832-4787
5    reinlawoffice@aol.com

6    Attorneys for Plaintiff
     JAMES GONSALVES and
7    MARY FOWLER

8

           IN THE UNITED STATES DISTRICT COURT
9
         IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11   JAMES GONSALVES and<br>MARY FOWLER, | Case No. C09-03966 THE<br>Civil Rights |
| 12       Plaintiffs, | |
| 13   v. | **CONSENT DECREE AND<br>~~[PROPOSED]~~ ORDER AS TO<br>INJUNCTIVE RELIEF ONLY** |
| 14 | |
| 15   TARGET CORPORATION;<br>MADISON BAYFAIR, LLC; PIZZA | |
| 16   HUT, INC.; AND DOES 1-10,<br>INCLUSIVE, | |
| 17 | |
| 18       Defendants. | |
| 19                          / | |

20       1.     Plaintiffs JAMES GONSALVES and MARY FOWLER (together

21 sometimes "Plaintiffs") filed a Complaint in this action on August 27, 2009, to

22 obtain recovery of damages for their discriminatory experiences, denial of access,

23 and denial of their civil rights, and to enforce provisions of the Americans with

24 Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and California

25 civil rights laws against Defendants TARGET CORPORATION and PIZZA

26 HUT, INC. (together sometimes "Defendants"), relating to the condition of

27 Defendants' public accommodations as of August 27, 2007, and continuing.

28 Plaintiffs have alleged that Defendants violated Title III of the ADA and sections

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND PROPOSED ORDER
AS TO INJUNCTIVE RELIEF ONLY
CASE C09-03966 THE

E:\Rein Law Office\2010.07.23. CONSENT DECREE (FINAL).wpd

1

1   51, 52, 54, 54.1, 54.3 and 55 of the California Civil Code, and sections 19955 *et*
2   *seq.* of the California Health & Safety Code by failing to provide full and equal
3   access to their facilities at the Bayfair Shopping Mall, 15555 E. 14ᵗʰ St., Suite
4   400, San Leandro California.

5       2.      Defendants deny the allegations in the Complaint. By entering into
6   this Consent Decree, Defendants do not admit liability in connection with the
7   allegations underlying Plaintiffs' Complaint. Plaintiffs and Defendants (together
8   sometimes the "Parties") hereby enter into this Consent Decree and Order for the
9   purpose of resolving injunctive relief aspects of this lawsuit without the need for
10  protracted litigation. Issues of damages and attorney fees, costs and expenses will
11  be the subject of further negotiations and litigation if necessary.

12

13  **JURISDICTION:**

14      3.      The Parties to this Consent Decree agree that the Court has
15  jurisdiction of this matter pursuant to 28 U.S.C. section 1331 for alleged
16  violations of the Americans with Disabilities Act of 1990, 42 U.S.C. sections
17  12101 *et seq.* and pursuant to supplemental jurisdiction for alleged violations of
18  California Health & Safety Code sections 19955 *et seq.*; Title 24, California Code
19  of Regulations; and California Civil Code sections 51, 52, 54, 54.1, 54.3, and 55.

20      4.      In order to avoid the costs, expense, and uncertainty of protracted
21  litigation, the Parties to this Consent Decree agree to entry of this Order to resolve
22  all claims regarding injunctive relief raised in the Complaint filed with this Court.
23  Accordingly, they agree to the entry of this Order without trial or further
24  adjudication of any issues of fact or law concerning Plaintiffs' claims for
25  injunctive relief.

26          WHEREFORE, the Parties to this Consent Decree hereby agree and
27  stipulate to the Court's entry of this Consent Decree and Order, which provides as
28  follows:

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND PROPOSED ORDER
AS TO INJUNCTIVE RELIEF ONLY
CASE C09-03966 THE

E:\Rein Law Office\2010.07.23. CONSENT DECREE (FINAL).wpd

2

**SETTLEMENT OF INJUNCTIVE RELIEF:**

5. This Order shall be a full, complete, and final disposition and settlement of Plaintiffs' claims against Defendants for injunctive relief that have arisen out of the subject Complaint.

6. The Parties agree and stipulate that the corrective work will be performed in compliance with the standards and specifications for disabled access as set forth in the California Code of Regulations, Title 24-2, and Americans with Disabilities Act Accessibility Guidelines, unless other standards are specifically agreed to in this Consent Decree and Order.

    a) **Remedial Measures:** Defendants agree to perform corrective work at the Target Store in the Bayfair Shopping Mall, 15555 E. 14th St., Suite 400, San Leandro California. The scope of the corrective work agreed upon by the parties is as follows:

    i. **RESTAURANT**

      (1) <u>Designated Accessible Tables</u>: Target will replace the tabletops on the tables identified in Plaintiffs' expert's report (**Attachment A** to this Consent Decree and Order) to provide adequate knee space and will label accessible tables accordingly.

      (2) <u>Dining Counter</u>: Target will remove a sufficient number of stools to provide the required clear floor space.

      (3) <u>Pizza Hut Express Service Counter</u>: Target will lower the counter to comply with applicable height requirements.

      (4) <u>Drink Dispenser Counter</u>: Target will make appropriate modifications to address these concerns identified in **Attachment A.**

    ii. **MEN'S RESTROOM**

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND PROPOSED ORDER
AS TO INJUNCTIVE RELIEF ONLY
CASE C09-03966 THE

E:\Rein Law Office\2010.07.23  CONSENT DECREE (FINAL).wpd

3

1      (1)   Entry Door: Target will modify the signage to make it
2            compliant and Target will modify the push pressure for
3            the door to the required standard.
4      (2)   Sink: Target will modify one sink to make it compliant
5            and will rotate the p-trap to make it compliant.
6      (3)   Soap Dispenser: Target will modify one soap dispenser
7            to make it compliant.
8      (4)   Hand Dryer: Target will modify one hand dryer to make
9            it compliant.
10     (5)   Mirror: Target will lower the mirror to the required
11           level.  The mirror to be lowered will be the one above
12           the sink that is being lowered in response to item ii.(2)
13           above.
14     (6)   Baby Changing Table: Target will lower the baby
15           changing table to make it compliant.  In regards to the
16           protrusion issue identified in **Attachment A**, the baby
17           changing table is compliant when in its closed position,
18           so Target will ensure the locking mechanism for the
19           baby changing table is functional and in good working
20           order.
21     (7)   Accessible Toilet Stall: Target will modify the stall door
22           landing and move the toilet paper dispenser to make it
23           compliant.
24  iii.  **WOMEN'S RESTROOM**
25     (1)   Entry Door: Target will modify the signage to make it
26           compliant and Target will modify the push pressure for
27           the door to the required standard.
28     (2)   Sink: Target will modify one sink to make it compliant

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND PROPOSED ORDER
AS TO INJUNCTIVE RELIEF ONLY
CASE C09-03966 THE

4

E:\Rein Law Office\2010.07.23. CONSENT DECREE (FINAL).wpd

1    and will rotate the p-trap to make it compliant.

2    (3)   <u>Soap Dispenser</u>: Target will modify one soap dispenser

3    to make it compliant.

4    (4)   <u>Baby Changing Table</u>:  Target will lower the baby

5    changing table to make it compliant.  In regards to the

6    protrusion issue identified in **Attachment A**, the baby

7    changing table is compliant when in its closed position,

8    so Target will ensure the locking mechanism for the

9    baby changing table is functional and in good working

10   order.

11   (5)   <u>Accessible Toilet Stall</u>: Target will modify the stall door

12   landing and move the toilet paper dispenser and sanitary

13   napkin disposal box to make it compliant.

14   (6)   <u>Ambulatory Accessible Toilet Stall</u>: Target will provide

15   an automatic self closer on the door, modify the height

16   of the toilet to make it compliant, modify the sanitary

17   seat cover dispenser location to a height within reach

18   range requirements, and move the sanitary napkin

19   disposal box to make it compliant.

20   iv.   **TRAINING OF EMPLOYEES**

21   Target will conduct a specialized training for its team members

22   at the Target store located at the Bayfair Mall in San Leandro,

23   California (the "Training"). The Training will note that a

24   complaint arose at the store regarding the provision of

25   customer service to customers with disabilities.  The Training

26   will further address the importance of being sensitive to the

27   special needs of customers with disabilities, including those

28   individuals with disabilities that are not obvious upon initial

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND PROPOSED ORDER
AS TO INJUNCTIVE RELIEF ONLY
CASE C09-03966 THE

E:\Rein Law Office\2010.07.23. CONSENT DECREE (FINAL).wpd

5

1    observation, and also including the need to offer and provide
2    assistance upon request.

3          b)    **Timing of Injunctive Relief:**  Defendants will submit plans
4    for all corrective work to the appropriate governmental agencies within 30 days of
5    the entry of this Consent Decree by the Court. Defendants will commence work
6    within 30 days of receiving approval from the appropriate agencies. Defendants
7    will complete all work within 30 days of commencement. In the event that
8    unforeseen difficulties prevent Defendants from completing any of the
9    agreed-upon injunctive relief, Defendants or their counsel will notify Plaintiffs'
10   counsel in writing within 15 days of discovering the delay. Defendants or their
11   counsel will notify Plaintiffs' counsel when the corrective work is completed, and
12   in any case will provide a status report no later than 120 days from the entry of
13   this Consent Decree.

14         c)    Defendants will notify Plaintiffs in writing at the end of 120
15   days as to the current status of agreed to injunctive relief, and every 90 days
16   thereafter until all access is provided.  If Defendants fail to provide injunctive
17   relief on the agreed-to timetable and/or fail to provide timely written status
18   notification, and Plaintiffs file a motion with the Court to obtain compliance with
19   these terms, Plaintiffs reserve the right to seek additional attorney fees for all
20   compliance work necessitated by Defendants' failure to keep their agreement.

21

22   **DAMAGES, ATTORNEY FEES, LITIGATION EXPENSES AND COSTS:**

23       7.    The Parties have not reached any agreement regarding Plaintiffs'
24   claims for damages, attorneys fees, litigation expenses and costs. These matters
25   will be the subject of future negotiation or litigation as necessary.

26

27   **ENTIRE CONSENT DECREE AND ORDER:**

28       8.    This Consent Decree and Order constitute the entire agreement

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND PROPOSED ORDER
AS TO INJUNCTIVE RELIEF ONLY
CASE C09-03966 THE

E:\Rein Law Office\2010.07.23. CONSENT DECREE (FINAL).wpd

6

1 | between the signing Parties on the matters of injunctive relief, and no other
2 | statement, promise or agreement, either written or oral, made by any of the Parties
3 | or agents of any of the Parties that is not contained in this written Consent Decree
4 | and Order shall be enforceable regarding the matters of injunctive relief described
5 | herein. This Consent Decree and Order applies to Plaintiffs' claims for injunctive
6 | relief only and does not resolve Plaintiffs' claims for damages, attorney fees,
7 | litigation expenses and costs, which shall be the subject of further negotiation
8 | and/or litigation. The Parties request the Court not dismiss the case, as issues of
9 | damages and attorney fees are still before the Court.

10

11 | **CONSENT DECREE AND ORDER BINDING ON PARTIES AND**
12 | **SUCCESSORS IN INTEREST:**

13 |      9.    This Consent Decree and Order shall be binding on Plaintiffs;
14 | Defendants TARGET CORPORATION and PIZZA HUT, INC.; and any
15 | successors in interest. The Parties have a duty to so notify all such successors in
16 | interest of the existence and terms of this Consent Decree and Order during the
17 | period of the Court's jurisdiction of this Consent Decree and Order.

18

19 | **MUTUAL RELEASE AND WAIVER OF CIVIL CODE SECTION 1542 AS**
20 | **TO INJUNCTIVE RELIEF ONLY:**

21 |      10.   Each of the Parties to this Consent Decree understands and agrees
22 | that there is a risk and possibility that, subsequent to the execution of this Consent
23 | Decree, any or all of them will incur, suffer or experience some further loss or
24 | damage with respect to the lawsuit which are unknown or unanticipated at the
25 | time this Consent Decree is signed. Except for all obligations required in this
26 | Consent Decree, the Parties intend that this Consent Decree apply to all such
27 | further loss with respect to the lawsuit, except those caused by the Parties
28 | subsequent to the execution of this Consent Decree. Therefore, except for all

1  obligations required in this Consent Decree, this Consent Decree shall apply to
2  and cover any and all claims, demands, actions and causes of action by the Parties
3  to this Consent Decree with respect to the lawsuit, whether the same are known,
4  unknown or hereafter discovered or ascertained, and the provisions of Section
5  1542 of the California Civil Code are hereby expressly waived.  Section 1542
6  provides as follows:

7      **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS**
8      **WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT**
9      **TO EXIST IN HIS OR HER FAVOR AT THE TIME OF**
10     **EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM**
11     **OR HER  MUST HAVE MATERIALLY AFFECTED HIS**
12     **SETTLEMENT WITH THE DEBTOR.**

13

14 This waiver applies to the injunctive relief aspects of this action only and does not
15 include resolution of Plaintiffs' claims for damages, attorney fees, litigation
16 expenses and costs.

17     11.   Except for all obligations required in this Consent Decree, and
18 exclusive of the referenced continuing claims for damages, statutory attorney fees,
19 litigation expenses and costs, each of the Parties to this Consent Decree, on behalf
20 of each, their respective agents, representatives, predecessors, successors, heirs,
21 partners and assigns, releases and forever discharges each other Party and all
22 officers, directors, shareholders, subsidiaries, joint venturers, stockholders,
23 partners, parent companies, employees, agents, attorneys, insurance carriers,
24 heirs, predecessors, and representatives of each other Party, from all claims,
25 demands, actions, and causes of action of whatever kind or nature, presently
26 known or unknown, arising out of or in any way connected with the lawsuit.

27

28

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND PROPOSED ORDER
AS TO INJUNCTIVE RELIEF ONLY
CASE C09-03966 THE

E:\Rein Law Office\2010 07.23. CONSENT DECREE (FINAL).wpd

8

**TERM OF THE CONSENT DECREE AND ORDER:**

12. This Consent Decree and Order shall be in full force and effect for a period of twelve (12) months after the date of entry of this Consent Decree and Order, or until the injunctive relief contemplated by this Order is completed, whichever occurs later. The Court shall retain jurisdiction of this action to enforce provisions of this Order for 48 months after the date of this Consent Decree, or until the injunctive relief contemplated by this Order is completed, whichever occurs later.

**SEVERABILITY:**

13. If any term of this Consent Decree and Order is determined by any court to be unenforceable, the other terms of this Consent Decree and Order shall nonetheless remain in full force and effect.

**SIGNATORIES BIND PARTIES:**

14. Signatories on the behalf of the Parties represent that they are authorized to bind the Parties to this Consent Decree and Order. This Consent Decree and Order may be signed in counterparts and a facsimile signature shall have the same force and effect as an original signature.

Dated: July 23, 2010          PLAINTIFF JAMES GONSALVES

_James A. Gonsalves_

·JAMES GONSALVES

Dated: July 23, 2010          PLAINTIFF MARY FOWLER

_Mary Fowler_

MARY FOWLER

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND PROPOSED ORDER
AS TO INJUNCTIVE RELIEF ONLY
CASE C09-03966 THE

9

E:\Rein Law Office\2010.07.23. CONSENT DECREE (FINAL).wpd

1  Dated: July 23, 2010          DEFENDANT TARGET CORPORATION

2

3                                By: _____

4                                Print name: Melissa A. Jungbauer

5                                Title: Paralegal – Target Corporation.

6

7  Dated: July 23, 2010          DEFENDANT PIZZA HUT, INC.

8

9                                By: _____

10                               Print name: Melissa A. Jungbauer

11                               Title: Paralegal – Target Corporation.

12

13  APPROVED AS TO FORM:

14

15  Dated: July 23, 2010          LAW OFFICES OF PAUL L. REIN

16

17                                By: _____

18  CATHERINE M.                  Paul L. Rein, Esq.
    CABALO                        Attorneys for Plaintiffs
19                                JAMES GONSALVES and MARY FOWLER

20

21  Dated: July 23, 2010          JONES DAY

22

23                                By: _____

24                                Aaron Agenbroad, Esq.
                                  Attorneys for Defendants
25                                TARGET CORPORATION and
                                  PIZZA HUT, INC.

26

27

28

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND PROPOSED ORDER
AS TO INJUNCTIVE RELIEF ONLY
CASE C09-03966 THE

E:\Rein Law Office\2010.07.23. CONSENT DECREE (FINAL).wpd

10

1

## ORDER

2

Pursuant to stipulation, and for good cause shown, IT IS SO ORDERED.

3

4

Dated: 7/27 , 2010

5

Honorable THELTON E. HENDERSON
United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE AND PROPOSED ORDER
AS TO INJUNCTIVE RELIEF ONLY
CASE C09-03966 THE

11

E:\Rein Law Office\2010.07.23. CONSENT DECREE (FINAL).wpd

# Barry N. Atwood and Associates

## 1260 Brighton Avenue  Suite 214, Albany, California  94706
Phone (510) 334-1058

## M E M O R A N D U M:

| | | |
|---|---|---|
| To: | Paul Rein | Date: February 21, 2010 |
| From: | Barry N. Atwood | |
| Subject: | Draft Report on Formal Inspection of the Target Store at Bay Faire Mall, San Leandro, CA. | |

On January 4, 2010 we conducted a site inspection on the facilities used by the Target Store at Bay Faire Mall located at 15555 East 14th Street in San Leandro, CA. We inspected the site to identify areas where the existing facility was not in compliance with the accessibility design guidelines found in the Americans with Disabilities Act Accessibility Guidelines and the relevant portions of Title 24, Parts 2, 3 and 5 of the California Building Code.  During the course of our inspection, we identified the following preliminary list of areas where the facilities on this site are out of compliance with the applicable codes and design specifications.



1

# TABLE OF CONTENTS

**Americans with Disabilities Act**
   Providing Accessible Facilities Used, Constructed or Altered by Title III Entities .................... 3

**California Statutory Obligations**
   Summary of California Code of Regulations ................................................................. 6

**Detailed Analysis of Coverage Under the ADA** ................................................................. 10

**Target Store**
   I.  **Restaurant**
       A. Designated Accessible Tables ........................................................................ 13
       B. Dining Counter ......................................................................................... 14
       C. Refrigerated Self Service Display Unit at South End of Pizza Hut Express Counter .... 15
       D. Pizza Hut Express Service Counter .................................................................. 16
       E. Drink Dispenser Counter .............................................................................. 17
       F. Floor mat In Front of Trash Cans ................................................................... 19
   II. **Men's Restroom**
       A. Entry Door .............................................................................................. 20
       B. Sink ...................................................................................................... 21
       C. Soap Dispenser ......................................................................................... 21
       D. Hand Dryer .............................................................................................. 22
       E. Mirror ................................................................................................... 22
       F. Baby Changing Table .................................................................................. 23
       G. Urinals .................................................................................................. 23
       H. Accessible Toilet Stall ............................................................................... 24
   III. **Women's Restroom**
       A. Entry Door .............................................................................................. 27
       B. Sink ...................................................................................................... 28
       C. Soap Dispenser ......................................................................................... 28
       D. Baby Changing Table .................................................................................. 29
       E. Accessible Toilet Stall ............................................................................... 30
       F. Ambulatory Accessible Toilet Stall .................................................................. 31

# Americans with Disabilities Act
## Summary of Requirements for Providing Accessible Facilities Used, Constructed or Altered by Title III Entities.

The construction, alteration or readily achievable barrier removal of facilities owned or operated by public accommodations are regulated under the Americans with disabilities Act (ADA) in the Department of Justice (DOJ) Title III Regulations found in 28 C.F.R. Part 36, Subpart D. These regulations impose a wide range of obligations on a Title III entity, to insure that facilities used to provide goods, services, facilities, advantages, or accommodations to the public are accessible to and usable by individuals with disabilities. Provisions for accessible facilities is part of the primary underlying obligation that individuals with disabilities are able to fully and equally enjoy any goods, services, facilities, privileges, advantages, or accommodations offered to the public at a place of business or public accommodation.

## New Construction.

The DOJ Title III Regulations found in 28 C.F.R. Subpart D, Section 36.401 specify that it is an act of discrimination to design and construct facilities for first occupancy after January 26, 1993, that are not readily accessible to and usable by individuals with disabilities. The phrase "readily accessible to and usable by individuals with disabilities" is a term that, in slightly varied formulations, has been used in the Architectural Barriers Act of 1968, the Fair Housing Act, the regulations implementing section 504 of the Rehabilitation Act of 1973, and current accessibility standards found in the Americans with Disabilities Act Accessibility Guidelines (ADAAG). It means, with respect to a facility or a portion of a facility, that it can be approached, entered, and used by individuals with disabilities (including mobility, sensory, and cognitive impairments) easily and conveniently. A facility must be built in strict compliance with the ADAAG to be considered readily accessible and usable by individuals with disabilities with respect to construction of the built environment. To the extent that a particular type or element of a facility is not specifically addressed by the standards, the language of ADAAG is the safest guide and should be applied to the maximum extent possible. Where appropriate technical standards exist, they should be applied and if there are no applicable scoping requirements (i.e., how many features must be accessible), then a reasonable number, but at least one, must be accessible.

### Analysis of Deficiencies.

The facts presented in this case show that these requirements were clearly violated by the Target Store at Bay Faire Mall located at 15555 East 14th Street in San Leandro, CA.

## Alterations.

The DOJ Title III Regulations found in 28 C.F.R. Subpart D, Section 36.402 specify that it is an act of discrimination to design and construct alterations to a place of public accommodation or a commercial facility, after January 26, 1992, which does not ensure that the altered portions of the facility are readily accessible to and usable by individuals with disabilities.

Alterations include, but are not limited to, remodeling, renovation, rehabilitation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangement in the plan configuration of walls, full-height partitions or other elements of the built environment, that effect or could effect the usability or usability of

3

the facility by individuals with disabilities. Normal maintenance, reroofing, painting or wallpapering, asbestos removal, or changes to mechanical and electrical systems are not alterations unless they affect the usability of building or facility.

If existing elements, spaces, or common areas are altered, then each such altered element, space, or area shall comply with the applicable provisions of ADAAG. Alterations that affect or could affect the usability of or access to an area of a facility that contains a primary function shall be made so as to ensure that, to the maximum extent feasible, the path of travel to the altered area and the restrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. A "path of travel" includes a continuous, unobstructed way of pedestrian passage by means of which the altered area may be approached, entered, and exited, and which connects the altered area with an exterior approach (including sidewalks, streets, and parking areas), an entrance to the facility, and other parts of the facility.

A "primary function" is defined as a major activity for which the facility is intended. Areas that contain a primary function include, but are not limited to, the customer services lobby of a bank, the dining area of a cafeteria, the meeting rooms in a conference center, as well as offices and all other work areas in which the activities of the public accommodation or other private entities using the facility are carried out."

## Readily Achievable Removal of Barriers

The DOJ Title III Regulations found in 28 C.F.R. Subpart D, Section 36.304 specify that it is an act of discrimination to fail to remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.

Architectural barriers are physical elements of a facility that impede access by people with disabilities. These barriers include more than obvious impediments such as steps and curbs that prevent access by people who use wheelchairs. In many facilities, telephones, drinking fountains, mirrors, and paper towel dispensers are mounted at a height that makes them inaccessible to people using wheelchairs. Conventional doorknobs and operating controls may impede access by people who have limited manual dexterity. Deep pile carpeting on floors and unpaved exterior ground surfaces often are a barrier to access by people who use wheelchairs and people who use other mobility aids, such as crutches. Impediments caused by the location of temporary or movable structures, such as furniture, equipment, and display racks, are also considered architectural barriers.

The obligation to engage in readily achievable barrier removal is a continuing one. Over time, barrier removal that initially was not readily achievable may later be required because of changed circumstances. In fact, the DOJ recommends that public accommodations develop an implementation plan designed to achieve continuing compliance with the ADA's readily achievable barrier removal requirements. Such a plan, if appropriately designed and diligently executed would serve as a centerpiece of a good compliance policy.

### Analysis of Deficiencies.

The facts presented in this case show that these requirements were clearly violated by the Target Store at Bay Faire Mall located at 15555 East 14th Street in San Leandro, CA.

## Maintenance of Accessible Features.

The DOJ Title III Regulations found in 28 C.F.R. Subpart C, Section 36.211 specify that it is an act of discrimination to fail to maintain in operable working condition those features of facilities and equipment that are required by the regulations to be readily accessible to and usable by persons with disabilities. This section recognizes that it is not sufficient to provide features such as accessible routes, elevators, or ramps, if those features are not maintained in a manner that enables individuals with disabilities to use them. Inoperable elevators, locked accessible doors, or "accessible" routes that are obstructed by overhanging obstructions, furniture, filing cabinets, or potted plants are neither "accessible to" nor "usable by" individuals with disabilities.

The regulations provide that this section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs. However, allowing obstructions or "out of service" equipment to persist beyond a reasonable period of time would violate this part, as would repeated mechanical failures due to improper or inadequate maintenance. Failure of the public accommodation to ensure that accessible routes are properly maintained and free of obstructions, or failure to arrange prompt repair of equipment or other elements intended to provide access, would also violate this part.

## Analysis of Deficiencies.

The facts presented in this case show that these requirements were clearly violated by the Target Store at Bay Faire Mall located at 15555 East 14th Street in San Leandro, CA.

# California Statutory Obligations
## Summary of California Code of Regulations, Title 24,
## Parts 2, 3 and 5 of the California Building Code.

Accessibility related requirements in California began on November 13, 1968 when California Government Code section 4450, which applied to buildings and facilities funded by any governmental entity became effective. California Government Code section 4450 specifies 'that all buildings, structures, sidewalks, curbs, and related facilities, constructed in this state by the use of state, county, or municipal funds, or the funds of any political subdivision of the state shall be accessible to and useable by individuals with disabilities.' Under this statute the Office of the State Architect was given responsibility to adopt any regulations and building standards necessary to assure that all buildings in the state were accessible to and usability by individuals with disabilities. After an extended development period of 10years, California's accessibility related building regulations were adopted by the Building Standards Commission and went into effect on July 1, 1981. During the code development period between November 13, 1968 and July 1, 1981 the applicable interim accessibility related design standards were the 1961 American Standards Association (ASA) "Specifications for Making Buildings and Facilities Accessible to, and usable by the Physically Handicapped." The ASA Specifications were made applicable to public accommodations or facilities constructed with private funds by Health and Safety Code sections 19955 and 19956, which became effective on July 1, 1970. Under these regulations newly constructed or existing privately funded buildings or facilities that undergo alterations or remodeling are required to be accessible to and usable by individuals with disabilities. Finally California passed Chapter 913, which added the directive with respect to those earlier statutes that 'in no case shall the State Architect's regulations and building standards prescribe a lesser standard of accessibility or usability than provided by regulations of the Federal Architectural and Transportation Barriers Compliance Board adopted to implement the Americans With Disabilities Act of 1990.' (Gov. Code, § 4450, subd. (b).)" (Id., at pp. 131-133, fns. omitted.)"

Except as otherwise provided by law, buildings, structures, sidewalks, curbs, and related facilities subject to the provisions of Part 5.5 (commencing with Section 19955) of Division 13 of the Health and Safety Code shall conform to the building standards published in the California Building Code relating to access for the persons with disabilities and the other regulations adopted pursuant to Government Code Section 4450 that are in effect on the date of an application for a building permit. With respect to buildings, structures, sidewalks, curbs, and related facilities not requiring a building permit, building standards published in the California Building Standards Code relating to access for persons with disabilities and other regulations adopted pursuant to California statute, and in effect at the time construction is commenced shall be applicable." (Government Code 4451(c).)

## Alterations.

"Any building or facility which would have been subject to accessibility specifications but for the fact it was constructed with public funds prior to November 13, 1968 and every existing privately funded public accommodation constructed prior to July 1, 1970, shall comply with the provisions of the accessibility regulations found in the California Building Code, when they undergo remodeling, renovation, rehabilitation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangement in the plan configuration of walls, full-height partitions; or other elements of the built environment. In this instance, compliance means that the area of remodeling or alterations; including any area where alterations to an accessibility related element (changes to door widths, corridor widths, path of travel clearances, or room remodels where the layout of the room is changed in a way that affects or could affect accessibility) occurs; an accessible route

from the boundary of the site and the designated accessible parking to a primary entrance to the building and then through the building to the area where new work is being done; at least one accessible restroom for each sex that serves the area of alteration; accessible telephones; accessible drinking fountains; and when possible, additional accessible elements such as storage and alarms.

The most important applicable definitions in the California Building Code regulations governing the design and construction of new projects in existing buildings, to make them accessible to and usable by individuals with disabilities include:

ADDITION means any work, which increases the floor or roof area or the volume of enclosed space of an existing building and is dependent on the structural elements of that facility for vertical or lateral support.

ALTERATION means any change in an existing building, which does not increase and may decrease the floor or roof area or the volume of enclosed space.

STRUCTURAL REPAIRS are any changes affecting existing or requiring new structural elements primarily intended to correct the effects of deterioration or impending or actual failure, regardless or cause." (Cal. Code Regs., tit. 24, §2331.)

**Special Note:**
A general statutory exemption to the literal requirements is authorized only "when it is clearly evident that equivalent facilitation and protection are thereby secured." (§ 4451, subd. (f).)

## Extract of Alteration Requirements From California Building Code.

### 2007
### DIVISION OF THE STATE ARCHITECT - ACCESS COMPLIANCE

### CALIFORNIA CODE OF REGULATIONS, TITLE 24, PART 2
### COMBINED IBC AND DOJ RULEMAKINGS

*109.1.1 Application. See Government Code commencing with Section 4450. Publicly funded buildings, structures, sidewalks, curbs and related facilities shall be accessible to and usable by persons with disabilities as follows:*

*109.1.1.4 All existing publicly funded buildings and facilities when alterations, structural repairs or additions are made to such buildings or facilities. For detailed requirements on existing buildings, see Chapter 11B, Division IV.*

*109.1.2 Application. See Health and Safety Code commencing with Section 19952. All privately funded public accommodations, as defined, and commercial facilities, as defined, shall be accessible to persons with disabilities as follows:*

*109.1.2.4 All existing privately funded public accommodations when alterations, structural repairs or additions are made to such public accommodations as set forth under Chapter 11B.*

## CHAPTER 2 DEFINITIONS AND ABBREVIATIONS

### SECTION 202 - DEFINITIONS

**ALTERATION *(or ALTER)*. ...**
*[DSA-AC] "Alteration (or Alter)" is any change, addition or modification in construction or occupancy or structural repair or change in primary function to an existing structure made by, on behalf of, or for the use of a public accommodation or commercial facility, that affects or could affect the usability of the building or facility or part thereof. Alterations include, but are not limited to, remodeling, renovation, rehabilitation, reconstruction, historic restoration, changes or rearrangement of the structural parts or elements, and changes or rearrangement in the plan configuration of walls and full-height partitions.*

**REMODELING.** *[DSA-AC] See "Alteration (or Alter)".*

**REPAIR.** The reconstruction or renewal of any part of an existing building for the purpose of its maintenance.

**TECHNICALLY INFEASIBLE. ...**
*[DSA-AC] "Technically Infeasible" means, with respect to an alteration of a building or a facility, that it has little likelihood of being accomplished because existing structural conditions would require removing or altering a load- bearing member which is an essential part of the structural frame; or because other existing physical or site constraints prohibit modification or addition of elements, spaces, or features which are in full and strict compliance with the minimum requirements for new construction and which are necessary to provide accessibility.*

### 1101B.6 Commercial Facilities Located in Private Residences.

**1.** *When a commercial facility is located in a private residence, the portion of the residence used exclusively as a residence is not covered by this chapter, except as required by Section 1111B.5, but **that portion used both for the commercial facility and for residential purposes is covered by the new construction and alterations requirements of this code. (Emphasis Added)***

**2.** *The portion of the residence covered **extends to those elements used to enter the commercial facility, including the homeowner's front sidewalk, if any, the door or entryway, and hallways; and those portions of the residence, interior or exterior, available to or used by employees or visitors of the commercial facility, including sanitary facilities. (Emphasis Added)***

### SECTION 1102B -DEFINITIONS
*For additional definitions pertinent to the Division of the State Architect-Access Compliance accessibility requirements, see Chapter 2, Section 202.*

*For the purpose of the chapter, certain terms are defined as follows:*

**PATH OF TRAVEL** *is a passage that may consist of walks and sidewalks, curb ramps and pedestrian ramps, lobbies and corridors, elevators, other improved areas, or a necessary*

8

*combination thereof, that provides free and unobstructed access to and egress from a particular area or location for pedestrians and/or wheelchair users.* **A "path of travel" includes a continuous, unobstructed way of pedestrian passage by means of which a particular area may be approached, entered, and exited, and which connects a particular area with an exterior approach (including sidewalks, streets, and parking areas), an entrance to the facility, and other parts of the facility. In existing buildings, when alterations, structural repairs or additions are made, the term "path of travel" also includes the sanitary facilities, telephones, drinking fountains, and signs serving the altered area. (Emphasis Added)**

### *Division IV – ACCESSIBILITY FOR EXISTING BUILDINGS*

### *SECTION 1134B*
### *ACCESSIBILITY FOR EXISTING BUILDINGS*

***1134B.1 Scope.*** *The provisions of this division* ***apply to renovation, structural repair, alteration and additions to existing buildings,*** *including those identified as historic buildings. This division identifies minimum standards for removing architectural barriers, and providing and maintaining accessibility to existing buildings and their related facilities.* ***(Emphasis Added)***

***1134B.2 General.*** *All existing buildings and facilities, when alterations, structural repairs or additions are made to such buildings or facilities, shall comply with all provisions of Division I, New Buildings, except as modified by this division. These requirements shall apply only to the area of specific alteration, structural repair or addition and shall include those areas listed below:*

> ***1134B.2.1*** *A primary entrance to the building or facility and the primary path of travel to the specific area of al\*teration, structural repair or addition, and sanitary facilities, drinking fountains, signs and public telephones serving the area.*

Detailed
Analysis of Coverage Under the ADA
Based on Specified Sections of
**U. S. Department of Justice Title III Regulations**
**28 CFR Part 36**

**Sec.36.104 Definitions.**
**Place of public accommodation** means a facility, operated by a private entity, whose operations affect commerce and fall within at least one of the following categories --

(2) A restaurant, bar, or other establishment serving food or drink;

(5) A bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

**Analysis**
Target Store at Bay Faire Mall located at 15555 East 14th Street in San Leandro, CA. clearly meets the definition of a "public accommodation" set forth in the DOJ regulations. Consequently, the provisions of Section 36.201 (see below) apply to this facility.

**Subpart B -- General Requirements**

**Sec.36.201 General.**

(a) Prohibition of discrimination. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation.

**Analysis**
Target Store at Bay Faire Mall located at 15555 East 14th Street in San Leandro, CA. discriminates against individuals with disabilities in many ways, including:

1. There are many violations of ADAAG within the elements of this facility.
2. The number of designated accessible seating spaces falls short of the total number required by the code
3. There are many violations of ADAAG within the public restrooms of this facility.

**Sec.36.202 Activities.**

(a) Denial of participation. A public accommodation shall not subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.

(b) Participation in unequal benefit. A public accommodation shall not afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through

contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.

(d) Individual or class of individuals. For purposes of paragraphs (a) through (c) of this section, the term "individual or class of individuals" refers to the clients or customers of the public accommodation that enters into the contractual, licensing, or other arrangement.

### Analysis

Target Store at Bay Faire Mall located at 15555 East 14th Street in San Leandro, CA. violates these three DOJ ADA Regulations and discriminates against individuals with disabilities in many ways, including:

1. There are many violations of ADAAG within the elements of this facility.
2. The number of designated accessible seating spaces falls short of the total number required by the code
3. There are many violations of ADAAG within the public restrooms of this facility.
4. The restaurant has known that their patrons regularly include individuals with mobility impairments and that their use of the amenities on the site is limited or prevented by architectural barriers. The policies practices and procedures used to operate the facility appears to be, to ignore that obligation and resist the physical changes required by the code.

### Sec.36.204 Administrative methods.

A public accommodation shall not, directly or through contractual or other arrangements, utilize standards or criteria or methods of administration that have the effect of discriminating on the basis of disability, or that perpetuate the discrimination of others who are subject to common administrative control.

### Analysis

Target Store at Bay Faire Mall located at 15555 East 14th Street in San Leandro, CA. discriminates against individuals with disabilities in many ways, including:

1. The developer and operator failed to design the facility to be fully in compliance with the code, when significant alterations were done in the facility during the construction projects since 1970 under state law and 1993 under the ADA. I have not been supplied

### Sec.36.302 Modifications in Policies, Practices, or Procedures.

Sec.36.302 (a) General. "A public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations."

### Analysis

Target Store at Bay Faire Mall located at 15555 East 14th Street in San Leandro, CA. violates this DOJ ADA Regulation and discriminates against individuals with disabilities in many ways, including:

1. The restaurant has known that their patrons regularly include individuals with mobility impairments and that their use of the amenities on the site is limited or prevented by architectural barriers. The policies practices and procedures used to operate the facility appears to be, to ignore that obligation and resist the physical changes required by the code.

**§ 36.304 Removal of Barriers.**

**§ 36.304 (a) General:** "A public accommodation shall not, directly or through contractual or other arrangements, utilize standards or criteria or methods of administration that have the effect of discriminating on the basis of disability, or that perpetuate the discrimination of others who are subject to common administrative control."

**Analysis**
Target Store at Bay Faire Mall located at 15555 East 14th Street in San Leandro, CA. violates this DOJ ADA Regulation and discriminates against individuals with disabilities in many ways, including:

1. The restaurant has known that their patrons regularly include individuals with mobility impairments and that their use of the amenities on the site is limited or prevented by architectural barriers. The policies practices and procedures used to operate the facility appears to be, to ignore that obligation and resist the physical changes required by the code.

## I. Restaurant

### A. Designated Accessible Tables



**1. Four Person Table Configuration Near Soda Dispensing Machine**

  **i. Kneespace**
  The height of the kneespace provided underneath these tables, projects back under the table a distance of 9⁷/₈" at the end of the table and 9" in the seating space; **which is less than the minimum code specified knee space that is 27" high, 30" wide and 19" deep.**

  **Remedial Action:** Alter or replace the tables in this dining facility to insure that a minimum of 5% of the seating complies with all of the code requirements related to persons using wheelchairs and other mobility assistive devices at fixed tables or counters, including the provision of knee spaces that is at least 27" high, 30" wide and projects at least 19" underneath the table surface.



**2. Two Person Table Near the Southwest Corner of the Restaurant (No Chair)**

  **i. Kneespace**
  The height of the kneespace provided underneath these tables, projects back under the table a distance of 9⁷/₈" at the end of the table and 9" in the seating space; **which is less than the minimum code specified knee space that is 27" high, 30" wide and 19" deep.**

  **Remedial Action:** Alter or replace the tables in this dining facility to insure that a

13

minimum of 5% of the seating complies with all of the code requirements related to persons using wheelchairs and other mobility assistive devices at fixed tables or counters, including the provision of knee spaces that is at least 27" high, 30" wide and projects at least 19" underneath the table surface.



### 3. Two Person Table on the Southwest Wall of the Restaurant (With Movable Chair)

#### i. Kneespace

The height of the kneespace provided underneath these tables, projects back under the table a distance of $9^{7/8}$" at the end of the table and 9" in the seating space; **which is less than the minimum code specified knee space that is 27" high, 30" wide and 19" deep.**

**Remedial Action:** Alter or replace the tables in this dining facility to insure that a minimum of 5% of the seating complies with all of the code requirements related to persons using wheelchairs and other mobility assistive devices at fixed tables or counters, including the provision of knee spaces that is at least 27" high, 30" wide and projects at least 19" underneath the table surface.



## B. Dining Counter

### 1. Accessible Seating at Counter

The stools at the dining counter are fixed to the floor and the typical distance between the seats is approximately $15^{1/4}$", **which does not provide the 30" by 48" clear floor space that serves the accessible seating space required by the code at the dining counter.**

14

**Remedial Action:** Reconfigure the counter and/or the fixed seating adjacent to it, to provide a 30" by 48" clear floor space and fully compliant knee space underneath the counter for at least one, but no fewer than 5% of the seating spaces at this dining counter.



## C. Refrigerated Self Service Display Unit at South End of Pizza Hut Express Counter

### 1. Height of Glass Trim at Front Face of Self Service Refrigerator

The height of the glass trim at the front face of the refrigerator unit is set at a height of $37^{5/8}$" above the finished floor, **which means that the fixture is inaccessible because the front surface is higher than the 34" maximum height permitted by the code when a user is required to reach across that obstruction to get food out of the fixture.**

**Remedial Action:** Lower the height of glass trim at the front face of the refrigerator unit, so the top edge of any obstruction that a user is required to reach across to get food out of the unit is set at a maximum height of 34" above the finished floor.

### 2. Reach Back to the Merchandise on Display Shelves

The front face of the upper two shelves in the self service refrigerated display cabinet are set approximately 24" back from the front face of the unit and all of the merchandise on these shelves is set back from the front face of the shelf; **which means that if a disabled patron wants to get an item off of either of these shelves, the length of the reach back across the obstruction below exceeds the 24" maximum distance permitted by the code.**

**Remedial Action:** Reconfigure the refrigerated display unit as necessary to insure that all of the merchandise in this cabinet is located within 24" on center from the front face of cabinet.

**NOTE:** A gravity feed solution, similar to the solution used in the self service hot food cabinet on the main counter near the cash registers, would resolve this issue without a great deal of expense or reduction in the amount of merchandise offered in this unit. (See photo at bottom of page 16)

### 3. Height of Top Shelf in Self Service Refrigerator

The top shelf in the self service refrigerated display cabinet is set approximately 24" back from the front face of the unit and it is set at a height of approximately 48¾" above the

finished floor, **which means that the height of the shelf exceeds the 46" maximum height permitted by the code when a patron must reach this far back across an obstruction.**

**Remedial Action:** Reconfigure the refrigerated display unit as necessary to insure that all of the merchandise in this cabinet is located within the "reach depth" across an obstruction and the "maximum height" ranges specified by the table below.

| Reach Depth | Maximum Height |
|---|---|
| 10" | 54" |
| 11" | 53 ½" |
| 12" | 53" |
| 13" | 52 ½" |
| 14" | 51 ½" |
| 15" | 51" |
| 16" | 50 ½" |
| 17" | 50" |
| 18" | 49 ½" |
| 19" | 49" |
| 20" | 48 ½" |
| 21" | 47 ½" |
| 22" | 47" |
| 23" | 46 ½" |
| 24" | 46" |



## D. Pizza Hut Express Service Counter

### 1. Height of Service Counter
The Pizza Hut service counter is set at a height of $34^{3/8}$" above the finished floor, **which does not comply with the specification of the code that requires a lower section of counter with a maximum height of 34" above the finished floor and a minimum length of 36".**

**Remedial Action:** Provide a lower section of counter that has a maximum height of 34" above the finished floor and a minimum length of 36".

## E. Drink Dispenser Counter



1. **Coffee Dispensers**

   a. **Reach Back to the Coffee Dispensers**

   The pump mechanisms for the coffee canisters are set approximately 26" back from the front face of the counter, **which means that the length of the reach across the obstruction that a patron must make to get the merchandise exceeds the 24" maximum distance permitted by the code.**

   **Remedial Action:** Reconfigure the counter and coffee dispensers as necessary to insure that all of the merchandise on this counter is located within 24" on center from the front face of the fixture.

   b. **Height of Pump Mechanisms for the Coffee Dispensers**

   The pumps for the coffee dispenser canisters are set at a height of approximately $62^{1/8}$" above the finished floor, **which means that the canisters are set beyond the 24" maximum reach back across an obstruction and the height of the operable mechanism exceeds the 46" maximum height above the finished floor permitted by the code when a patron must reach this far back across an obstruction.**

   **Remedial Action:** Reconfigure the counter and coffee dispensers as necessary to insure that all of the operable mechanisms and all of the merchandise on this counter are located within the "reach depth" across an obstruction and the "maximum height" ranges specified by the table below.

   | Reach Depth | Maximum Height |
   |---|---|
   | 10" | 54" |
   | 11" | 53 ½" |
   | 12" | 53" |
   | 13" | 52 ½" |
   | 14" | 51 ½" |
   | 15" | 51" |
   | 16" | 50 ½" |
   | 17" | 50" |
   | 18" | 49 ½" |
   | 19" | 49" |
   | 20" | 48 ½" |
   | 21" | 47 ½" |
   | 22" | 47" |
   | 23" | 46 ½" |
   | 24" | 46" |

17



## 2. Plastic Eating Utensils, Drink Lids, Napkin and Straw Dispensers

### a. Height of Straw Dispenser

The straw dispenser is set at a height of approximately $58^{5/8}$", the napkin dispensers are set at a height of approximately $56^{1/8}$", the top two canisters of plastic eating utensils are set at a height of approximately $50^{1/8}$" above the finished floor and all of these dispensers are set at a distance of approximately 24" back from the front face of the counter, **which means that the height of these dispensers exceeds the 46" maximum height above the finished floor permitted by the code when a patron must reach this far back across an obstruction.**

**Remedial Action:** Reconfigure the counter and/or the dispensers as necessary to insure that all of the items on this counter are located within the "reach depth" across an obstruction and the "maximum height" ranges specified by the table below.

| Reach Depth | Maximum Height |
| --- | --- |
| 10" | 54" |
| 11" | 53 ½" |
| 12" | 53" |
| 13" | 52 ½" |
| 14" | 51 ½" |
| 15" | 51" |
| 16" | 50 ½" |
| 17" | 50" |
| 18" | 49 ½" |
| 19" | 49" |
| 20" | 48 ½" |
| 21" | 47 ½" |
| 22" | 47" |
| 23" | 46 ½" |
| 24" | 46" |



### 3. Condiment trays at North End of Counter

#### a. Height of Straw Dispenser

The top row of condiment trays is set at a height of approximately $46^{1/4}$" above the finished floor and these trays are set at a distance of approximately 28" back from the front face of the counter, **which means that the trays are set beyond the 24" maximum reach across an obstruction and the height of this row of condiment trays exceeds the 46" maximum height above the finished floor that is permitted by the code when a patron must reach 24" back across an obstruction.**

**Remedial Action:** Reconfigure the counter and/or the dispensers as necessary to insure that all of the items on this counter are located within the "reach depth" across an obstruction and the "maximum height" ranges specified by the table below.

| Reach Depth | Maximum Height |
|---|---|
| 10" | 54" |
| 11" | 53 ½" |
| 12" | 53" |
| 13" | 52 ½" |
| 14" | 51 ½" |
| 15" | 51" |
| 16" | 50 ½" |
| 17" | 50" |
| 18" | 49 ½" |
| 19" | 49" |
| 20" | 48 ½" |
| 21" | 47 ½" |
| 22" | 47" |
| 23" | 46 ½" |
| 24" | 46" |

## F. Floor mat In Front of Trash Cans

### 1. Floor mat

The existing floor mat provided in front of the two trash cans is not firmly attached to the finished floor, **which does not meet the code requirement that the floor mat be firmly**

attached to the floor in order for the surface to be stable, firm and slip resistant.

**Remedial Action:** Either remove the existing floor mat or firmly attach it to the surface so it cannot be easily moved, raised up or buckle as a wheelchair or other mobility assistive device crosses over it.

## II. Men's Restroom

### A. Entry Door



#### 1. Signage

##### a. Title–24 Signage

###### i. Location
**Title –24 Signage**
No clearly contrasting Title 24 signage that is mounted at a height of 60" above the finished floor has been provided on this door, **which is required by the code.**

**Remedial Action:** Install a clearly contrasting triangle that is exactly 12" on each side, in the center of the bathroom door in this location, which is mounted at a height of 60" on center above the finished floor.

##### b. ADA Signage
The existing ADA Signage has been mounted on the strike edge door at a height of 59" above the finished floor, **which is required by the code to be mounted adjacent to the strike edge of the door at a height of 60" above the finished floor.**

**Remedial Action:** Install a fully compliant ADA sign including raised characters and Grade No. 2 Braille on the latch side of the door, centered at a height of 60" above the finished floor or relocate the existing ADA sign so that it is centered at a height of 60" above the finished floor.

#### 2. Push Pressure
The push pressure required to open this door is 7.5 lbs, **which exceed the 5 pound maximum push pressure permitted by the code.**

**Remedial Action:** Adjust or replace the existing door closer so the maximum effort required to open the door is 5 pounds of pressure.

## B. Sink

All of the sinks in this restroom are set at approximately the same height, so arbitrarily selected the fixture at the north end of the four as a typical condition, so we could avoid duplicating our measurements.



### 1. Kneespace

#### a. Height

The sink in this restroom has kneespace underneath it that is set at a height of $26^{1/2}$" above the finished floor at a distance of 8" back from the front face of the fixture, **which does not meet the minimum code requirement that kneespace measuring a height of 29" at the front face and 27" at a distance of 8" back from the front face of the fixture be provided.**

**Remedial Action:** Relocate or replace the existing fixture to provide knee space underneath the fixture that has a minimum height of 29" above the finished floor at the front face and 27" above the finished floor at a distance of 8" back from the front face of the fixture.

#### b. P-Trap

The distance from the face of the wall to the front face of the p-trap is $9^{1/2}$", the width of the sink is $17^{3/4}$", so the p-trap projects $8^{1/4}$" into the toe space required under the sink; **which exceeds the 6" maximum intrusion into the toe space that is permitted by the code.**

**Remedial Action:** Reconfigure or replace the fixture so the minimum distance between the front face of the sink and the face of the p-trap is 11".

## C. Soap Dispenser

### 1. Mounting Height

The height of the operable mechanism for the soap dispenser is set at a height of $41^{1/4}$" above the finished floor, **instead of the maximum height of 40" above the finished floor that is required by the code.**

**Remedial Action:** Relocate this item so it is adjacent to a 30" by 48" clear floor ground space and the operable mechanism is mounted no higher than 40" on center, above the finished floor.

**D. Hand Dryer**



**1. Clear Floor Space**

The distance between the edge of the sink and the trashcan at the south end of the four sinks in this restroom is approximately $15^{1/2}$" and the distance between the edge of the sink and the trashcan at the north end of the four sinks in this restroom is approximately $22^{3/4}$", **which does not provide the full unobstructed side of a 30" by 48" clear floor space adjacent to either one of these fixtures that is required by the code.**

**Remedial Action:** Relocate at least one of these fixtures, so it is mounted adjacent to one full unobstructed side of a 30" by 48" clear floor ground space and is mounted with the operable mechanism set at a maximum height of 40" above the finished floor.

**E. Mirror**

The bottom edge of the reflective surface of the mirror is set at a height of $52^{5/8}$" above the finished floor, **instead of the 40" maximum permitted by the code.**

**Remedial Action:** Relocate this item so it is adjacent to a 30" by 48" clear floor ground space and the bottom edge of the reflective surface is mounted no higher than 40" above the finished floor.



**F. Baby Changing Table**

   **1. Height**

     The work surface of the baby changing table is set at a height of approximately $37^{1/2}$" above the finished floor, **which is higher than the 34-inch maximum height for a work surface that is specified by the code.**

     **Remedial Action:** Relocate or replace the fixture, so the rim or work surface is mounted no higher than 34" above the finished floor.



   **2. Protruding Object**

    **a. Projection From Wall**

     The bottom edge of the baby changing table is set at a height of $34^{7/8}$" above the finished floor and the table projects $19^{3/8}$" off of the face of the wall that it is mounted on, **which makes this a projecting object that does not meet the code requirement specifying objects projecting more than 4" from a wall shall either be protected or mounted at a height that is greater than 80" or below 27" above the finished floor.**

     **Remedial Action:** Remove any protruding object that project more than 4" off the wall and that have their bottom edge set at a height ranging between 27" and 80" above the finished floor, enclose them in an alcove or place some obstruction below the entire surface of the protruding object that comes to within 27" of the finished floor.



**G. Urinals**

   **1. Clear Floor Space**

     The clear floor space provided in front of the accessible fixture is approximately $43^{3/4}$" between the front face of the urinal and the edge of the baby changing table in the folded out

position, **which is below the 48" minimum length of the 30" by 48" clear floor ground space required by the code in front of this fixture.**

**Remedial Action:** Reconfigure the restroom to provide a 30" by 48" clear floor space in front of the accessible urinal that is oriented for a front approach and is completely unobstructed by anything.

## H. Accessible Toilet Stall

### 1. Stall Door Landing



### b. Length of Landing
The distance between the face of the closed accessible stall door and the trash can, located directly in front of the exterior side of the stall door is approximately $56^{1/4}$"; **which is below the 60" minimum length for the clear door landing required by the code for this door.**

**Remedial Action:** Reconfigure the clear floor space for this entry condition to provide a fully complying door landing on the swing side of the door, which extends a minimum of 60", measured perpendicular from the face of the closed door and extends a minimum of 18" beyond the strike edge of the door.



## 2. Toilet

### a. Centerline

The toilet is set at a distance of $18^{1/4}$" on center from the adjacent wall, **instead of the exactly 18" distance required by the code.**

**Remedial Action:** Relocate the toilet or adjust the location of the face of the adjacent wall, so the toilet is mounted exactly 18" on center from the face of the adjacent wall.

## 3. Toilet Paper Dispenser

### a. Distance in Front of Fixture

The toilet paper dispenser is set at a distance of 20" in front of the toilet, **which exceeds the 12-inch maximum distance between the front face of the toilet and the toilet paper dispenser that is permitted by the code.**

**Remedial Action:** Relocate the toilet paper dispenser so it is mounted underneath the grab bar, with a maximum distance of 12" between the front face of the toilet and the centerline of the furthest roll of toilet paper, with the fixture mounted at a minimum height of 19" on center above the finished floor.

### b. Mounting Location

The toilet paper dispenser is mounted above the grab bar at a height of approximately 45" above the finished floor, **which does not meet the code requirement that the fixture be mounted below the grab bar at a minimum height of 19" above the finished floor.**

**Remedial Action:** Relocate the toilet paper dispenser so it is mounted underneath the grab bar, with a maximum distance of 12" between the front face of the toilet and the centerline of the furthest roll of toilet paper, with the fixture mounted at a minimum height of 19" on center above the finished floor.

## 4. Grab Bars

### a. Side Grab Bar

#### i. Knuckle Space

The knuckle space provided between the face of the wall and the interior face of this grab bar is $1^{3/4}$", **instead of the exactly $1^{1/2}$" dimension required by the code.**

**Remedial Action:** Remount the grab bar so that the distance between the face of the adjacent wall and the interior face of the grab bar is exactly $1^{1/2}$".

ii. **Mounting Height**
The mounting height of this grab bar ranges between $33^{1/2}$" and 34" above the finished floor, **instead of being mounted 33" on center above the finished floor as required by the code.**

**Remedial Action:** Relocate the grab bar so it is mounted on the wall beside the toilet at a height of 33" on center above the finished floor.

iii. **Usability of Grab Bar**
The grab bar on the permanent wall is partially obstructed by the toilet paper dispenser that is mounted above it, with a 6" distance between the top of the grab bar and the bottom edge of a toilet paper dispenser and the fixture projects $5^{1/2}$" off the face of the stall wall, **which violates the space requirements above the grab bar specified by the code and makes that portion of the grab bar unusable.**

**Remedial Action:** Provided fully complying grab bar in this location that is a minimum of 42" long, is located 33' above the finished floor, positioned so it projects 24" in front of the face of the toilet, provides knuckle space of $1^{1/2}$" between the face of the adjacent wall and the interior face of the grab bar and does not have any obstructions mounted above it.

b. **Rear Grab Bar**

i. **Projection From Side Wall**
The interior end of the rear grab bar is set $6^{1/2}$" from the front face of the wall beside the toilet, **which is more than the 6" maximum distance between the end of the grab bar and the face of the wall beside the toilet that is permitted by the code.**

**Remedial Action:** Relocate the grab bar so the interior end is set at a maximum distance of 6" from the face of the wall beside the toilet.

**III. Women's Restroom**



**A. Entry Door**

 **1. Signage**

   **a. Title–24 Signage**

      **i. Location**
      No clearly contrasting Title 24 signage that is mounted at a height of 60" above the finished floor has been provided on this door, **which is required by the code.**

      **Remedial Action:** Install a clearly contrasting 12" diameter circle in the center of the bathroom door in this location, which is mounted at a height of 60" on center above the finished floor.

   **b. ADA Signage**
   The existing ADA Signage has been mounted on the strike edge door at a height of 59" above the finished floor, **which is required by the code to be mounted adjacent to the strike edge of the door at a height of 60" above the finished floor.**

   **Remedial Action:** Install a fully compliant ADA sign including raised characters and Grade No. 2 Braille on the latch side of the door, centered at a height of 60" above the finished floor or relocate the existing ADA sign so that it is centered at a height of 60" above the finished floor.

 **2. Push Pressure**
 The door sticks in the closed position so the push pressure required to open this door is 20lbs until the door gets unstuck and then it is reduced to 7lbs to complete the opening procedure, **which exceed the 5 pound maximum pressure permitted by the code.**

 **Remedial Action:** Adjust or replace the existing door closer so the maximum effort required to open the door is 5 pounds of pressure.



**B. Sink**

All of the sinks in this restroom are set at approximately the same height, so we selected the fixture with the lower mirror to measure, which would at least insure that the mirror at the sink would comply with the code.

**1. Kneespace**

**a. Height**

The sink in this restroom has kneespace underneath it that is set at a height of 26$^{1/2}$" above the finished floor at a distance of 8" back from the front face of the fixture, **which does not meet the minimum code requirement that kneespace measuring a height of 29" at the front face and 27" at a distance of 8" back from the front face of the fixture be provided.**

**Remedial Action:** Relocate or replace the existing fixture to provide knee space underneath the fixture that has a minimum height of 29" above the finished floor at the front face and 27" above the finished floor at a distance of 8" back from the front face of the fixture.

**b. P-Trap**

The distance from the face of the wall to the front face of the p-trap is 10", the width of the sink is 17$^{3/4}$", so the p-trap projects 8$^{1/4}$" into the toe space required under the sink, **which exceeds the 6" maximum intrusion into the toe space that is permitted by the code.**

**Remedial Action:** Reconfigure or replace the fixture so the minimum distance between the front face of the sink and the face of the p-trap is 11".

**C. Soap Dispenser**

**1. Mounting Height**

The height of the operable mechanism for the soap dispenser is set at a height of 41$^{1/4}$" above the finished floor, **instead of the maximum height of 40" above the finished floor that is required by the code.**

**Remedial Action:** Relocate this item so it is adjacent to a 30" by 48" clear floor ground space and the operable mechanism is mounted no higher than 40" on center, above the finished floor.



### D. Baby Changing Table

#### 1. Height

The work surface of the baby changing table is set at a height of approximately 36" above the finished floor, **which is higher than the 34-inch maximum height for a work surface that is specified by the code.**

**Remedial Action:** Relocate or replace the fixture, so the rim or work surface is mounted no higher than 34" above the finished floor.



#### 2. Protruding Object

##### a. Projection From Wall

The bottom edge of the baby changing table is set at a height of 33" above the finished floor and the table projects 19³⁄₈" off of the face of the wall that it is mounted on, **which makes this a projecting object that does not meet the code requirement specifying objects projecting more than 4" from a wall shall either be protected or mounted at a height that is greater than 80" or below 27" above the finished floor.**

**Remedial Action:** Remove any protruding object that project more than 4" off the wall and that have their bottom edge set at a height ranging between 27" and 80" above the finished floor, enclose them in an alcove or place some obstruction below the entire surface of the protruding object that comes to within 27" of the finished floor.

**E. Accessible Toilet Stall**



1. **Stall Door Landing**

   a. **Length of Landing**
      The distance between the face of the closed accessible stall door and the trash can, located directly in front of the exterior side of the stall door is approximately $34^{1/4}$"; **which is below the 60" minimum length for the clear door landing required by the code.**

      **Remedial Action:** Reconfigure the clear floor space for this entry condition to provide a fully complying door landing on the swing side of the door, which extends a minimum of 60", measured perpendicular from the face of the closed door and extends a minimum of 18" beyond the strike edge of the door.



## 2. Toilet Paper Dispenser

### a. Distance in Front of Fixture

The toilet paper dispenser is set at a distance of $14^{5/8}$" in front of the toilet, **which exceeds the 12-inch maximum distance between the front face of the toilet and the toilet paper dispenser that is permitted by the code.**

**Remedial Action:** Relocate the toilet paper dispenser so it is mounted underneath the grab bar, with a maximum distance of 12" between the front face of the toilet and the centerline of the furthest roll of toilet paper, with the fixture mounted at a minimum height of 19" on center above the finished floor.

### b. Mounting Height

The toilet paper dispenser is set at a height of $18^{1/4}$" above the finished floor, **which is below the 19" minimum height that is required by the code.**

**Remedial Action:** Relocate the toilet paper dispenser so it is mounted underneath the grab bar, with a maximum distance of 12" between the front face of the toilet and the centerline of the furthest roll of toilet paper and with the fixture mounted at a minimum height of 19" on center above the finished floor.

## 3. Sanitary Napkin Disposal Box

### a. Distance in Front of Fixture

The sanitary napkin disposal box is set at a distance of $18^{5/8}$" in front of the toilet, **which exceeds the 12-inch maximum distance between the front face of the toilet and the toilet paper dispenser that is permitted by the code.**

**Remedial Action:** Relocate the sanitary napkin disposal box so it is mounted at a maximum distance of 12" on center in front of the toilet.

## F. Ambulatory Accessible Toilet Stall

The number of toilet stalls provided in this restroom is 6 stalls, which means that an accessible ambulatory stall is required by the code.



31

1. **Stall Door**

   a. **Self Closer**
      No self closer has been provided on the designated accessible ambulatory stall door, **which does not meet the code requirement that there be a self closer on this stall door.**

      **Remedial Action:** Provide an automatic self closer on the door to the designated accessible stall.

2. **Toilet**

   a. **Seat Height**
      The height of the toilet seat is set at a height of 16" above the finished floor, **instead being within the required height range of 17" to 19" above the finished floor.**

      **Remedial Action:** Replace the toilet with a model that has a seat height of 17" to 19" above the finished floor.

3. **Sanitary Napkin Disposal Box**

   a. **Distance in Front of Fixture**
      The sanitary napkin disposal box is set at a distance of $18^{1/8}$" in front of the toilet, **which exceeds the 12-inch maximum distance between the front face of the toilet and the toilet paper dispenser that is permitted by the code.**

      **Remedial Action:** Relocate the sanitary napkin disposal box so it is mounted at a maximum distance of 12" on center in front of the toilet.

4. **Grab Bars**
   The designation of grab bars in this section is made on the basis of their location as seen from the outside of the stall, looking into the space.

   a. **Left Side Grab Bar**

      i. **Mounting Height**
         The mounting height of this grab bar is set at $33^{5/8}$" above the finished floor, **instead of 33" on center above the finished floor as required by the code.**

         **Remedial Action:** Relocate the grab bar so it is mounted at on the wall beside the toilet at a height of 33" on center above the finished floor.

   b. **Right Side Grab Bar**

      i. **Mounting Height**
         The mounting height of this grab bar is set at $33^{1/2}$" above the finished floor, **instead of 33" on center above the finished floor as required by the code.**

**Remedial Action:** Relocate the grab bar so it is mounted at on the wall beside the toilet at a height of 33" on center above the finished floor.

5. **Sanitary Seat Cover Dispenser**

   a. **Clear Floor Space**
   The sanitary seat cover dispenser is mounted on the wall behind the toilet and is not adjacent to a clear floor ground space, **which fails to meet the code requirement that the fixture be mounted adjacent to a 30-inch by 48-inch clear floor ground space.**

   **Remedial Action:** Relocate this item so it is adjacent to a 30" by 48" clear floor ground space and is mounted no higher than 40" above the finished floor to the centerline of the dispensing portion of the fixture.

   b. **Mounting Height**
   The sanitary seat cover dispenser is mounted at a height of 47-1/2" above the finished floor, **which fails to meet the code requirement that the fixture be mounted no higher than 40" above the finished floor to the center of the dispensing portion of the dispenser.**

   **Remedial Action:** Relocate this item so it is adjacent to a 30" by 48" clear floor ground space and is mounted no higher than 40" above the finished floor to the centerline of the dispensing portion of the fixture.

If you have any questions or require additional information, please feel free to call us at (510) 334-1058.

Sincerely,


Barry N. Atwood
Principal
Barry N. Atwood and Associates